UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL CASE NO. 13-160-WOB-CJS**

**TRINA SCHOLL**                                                  **PLAINTIFF**

**v.**                         **<u>REPORT AND RECOMMENDATION</u>**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                 **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

Plaintiff Trina Scholl brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under Title XVI of the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. After a thorough review of the administrative record, for the reasons explained herein, it will be **recommended** that the Commissioner's Motion for Summary Judgment (R. 21) be **denied,** and Plaintiff's Motion for Summary Judgment (R. 17) be **granted in part,** and the matter be **remanded** to the Commissioner.

**I.**     **STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id.* at 803-04. "A 'severe

impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (*citing Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on October 11, 2006, when she was 28 years old. (Administrative Record (A.R.) 48). Plaintiff has an eighth-grade education, and previous work experience as a cashier. (*Id.* at 50-51). Plaintiff claims disability based on heart problems, depression, seizures, back problems, nerve damage in her stomach, short leg syndrome, and pleurisy. (*Id.* at 311, 385).

On October 27, 2006, Plaintiff filed applications for disability insurance benefits and supplemental security income, with a protective filing date of October 11, 2006. (*Id.* at 18). These claims were denied initially, upon reconsideration, and in a decision by the Administrative Law

3

Judge (ALJ) dated July 15, 2009 (*Id.*). Plaintiff appealed the ALJ's decision, and on January 6, 2011, the Appeals Council remanded the case due to a conflict in finding significant work-related limitations despite finding no severe mental or physical impairments. (*Id.*). On remand, the ALJ held an administrative hearing in July of 2011 where Plaintiff amended her alleged onset date to October 11, 2006, the date she filed her SSI application. Therefore, at Plaintiff's request, the ALJ dismissed Plaintiff's application for disability insurance benefits. (*Id.* at 48, 266). Plaintiff appeared and testified at the hearing before the ALJ. The ALJ also heard testimony from an impartial vocational expert (VE). (*Id.* at 85-92). After receiving testimony and reviewing the record, the ALJ issued a written decision on September 8, 2011, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 15-41). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 1-3).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.* at 19). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since October 11, 2006—the date of her amended alleged onset date of her disability.[1] (A.R. 20). At step two, the ALJ determined that Plaintiff had the severe impairments of obesity, a heart condition, lumbar disc disease, neuropathy in the legs, diabetes, migraine headaches, anxiety, depression, and panic attacks under 20 C.F.R. § 416.920(c). (*Id.*). As part of this analysis the ALJ considered Plaintiff's complaints of reflux disease, irritable bowel disease, hypertension, and the like, but noted that these complaints were either resolved with

---

[1]The ALJ found Plaintiff only met the insured status requirements of the Social Security Act through March 31, 2000. With Plaintiff's amended onset date of October 11, 2006, the ALJ found that Plaintiff did not meet the insured status requirements for disability insurance benefits. Thus, only Plaintiff's application for supplemental security income remains. (A.R. 20).

treatment or well-controlled with medications, and thus did not support a finding of severe impairments, as defined by the Act. (*Id.* at 25).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listing of Impairments under the applicable Federal Regulation. (*Id.* at 25). At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R. § 416.967(a), with position changes as needed. (*Id.* at 25, 30). The ALJ also included several non-exertional limitations. (*Id.*). Due to Plaintiff's mental impairments, the ALJ found her capacity for sedentary work was further limited to performing mainly simple, routine, and repetitive work without strict time or production standards or quotas. Additionally, Plaintiff should have only superficial contact with coworkers and no contact with the public. (*Id.* at 31). The ALJ heard testimony from an impartial VE who stated that based on the RFC provided by the ALJ, Plaintiff could not perform her past relevant work as a cashier. (*Id.* at 31). The ALJ proceeded to step five, and adopted the VE's opinion that, given the stated RFC, there were other jobs in the national economy that an individual of Plaintiff's age, education, and work experience would be able to perform, representative occupations being inspector, sorter, and weight tester. (*Id.* at 32-33). Accordingly, the ALJ concluded that Plaintiff was not "disabled" for social security purposes. (*Id.* at 32).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and on July 1, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's September 8, 2011, decision denying Plaintiff benefits the final decision of the Commissioner. (*Id.* at 1). On

September 3, 2013, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was contrary to law. (R. 1, at 2).

Plaintiff has filed a Motion for Summary Judgment, arguing that the ALJ failed to properly weigh the opinions of Plaintiff's treating physicians, Dr. Hansen and Dr. Bayulot. (R. 17-1, at 1). Plaintiff also contends that the ALJ erred in assigning substantial weight to the opinions of non-treating and non-examining physicians. (*Id.* at 1). Each of these arguments will be addressed in turn.

### III.    ANALYSIS

#### A.    The ALJ erred by failing to provide "good reasons" for assigning "some" weight to the opinions of Plaintiff's treating physicians.

##### 1.    Dr. Hansen

Dr. Kendall Hansen, a pain specialist, treated Plaintiff beginning in October 2006 for complaints of significant pain in her back and stomach. (A.R. 22, 509). In October 2006, he diagnosed her with lumbar intervertebral disc disorder with myelopathy, right L5; lumbosacral spondylosis bilateral L2 to S1; right sacriolitis; ilioinguinal neuralgia; and neuromas. (*Id.* at 511). Treatment notes from Dr. Hansen indicate that Plaintiff has received an array of treatment for her back pain, including narcotic pain medications, nerve root blocks, medial branch nerve blocks of the facets, epidural steroid injections, thermal destruction of the medial nerves, sacroiliac joint injections, and bilateral trochanteric bursa injections. (*Id.* at 23, 660-771; 820-60).

In July 2011, Dr. Hansen provided a residual functional capacity assessment which identified greater restrictions on Plaintiff's ability to work than those ultimately found by the ALJ. (*Id.* at 1894-95). Dr. Hansen opined that Plaintiff could only lift less than 5 pounds occasionally, and 10 to 15 pounds rarely. (*Id.* at 1894). He also found that Plaintiff could only sit for an hour at a time,

and would be limited to sitting for a total of 3 to 4 hours in a workday. (*Id.*). He indicated that Plaintiff could stand or walk for an hour each, or in combination for two hours a day. (*Id.* at 1895). Furthermore, he opined that she should not bend or stoop, and warned that she was prone to exacerbations in her back pain where she would be unable to focus. (*Id.* at 1895). Dr. Hansen believed that Plaintiff would not be reliable in a sedentary job for 8 hours a day, 5 days a week. (*Id.*). The ALJ gave "some weight" to the restrictions included in Dr. Hansen's July 2011 RFC assessment. (A.R. 30).

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that she is not disabled because the ALJ failed to accept the opinions of Plaintiff's treating physician, Dr. Hansen. (R. 17-1, at 12). "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted); 20 C.F.R. § 416.927(c)(2). An ALJ must give the opinion of a treating source controlling weight if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). Moreover, if a treating physician's opinion is not given controlling weight, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988)(citations omitted). But the opinion of a treating physician is entitled to greater weight only if it is based on sufficient medical data, *Houston v. Secretary of Health & Human Services*, 736 F.2d 365, 367 (6th Cir. 1984), and is not contradicted by substantial evidence to the contrary. *Loy v. Secretary*, 901 F.2d 1306, 1308-09 (6th Cir. 1990).

If the ALJ elects not to accord the treating physician's opinion controlling weight, the regulations require her to give "good reasons" for the weight she gives to the treating source's opinion. 20 C.F.R. § 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. To meet this requirement, the ALJ must first clarify whether the treating source's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "not inconsistent with the other substantial evidence in [the] case record," and identify evidence to support her finding. *Id.* at 546. Second, the ALJ must determine what weight she accorded the treating source's opinion by considering the five factors outlined in 20 C.F.R. § 416.927(c)(1)-(5). *Gayheart*, 710 F.3d at 376; *Willis v. Colvin*, No. 12-50-DLB, 2013 WL 4591236, at *3 (E.D. Ky. Aug. 28, 2013). These factors include: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. 20 C.F.R. § 416.927(c)(2).

The ALJ "must not be vague or overly general" in explaining her application of the treating physician rule. *Willis*, 2013 WL 4591236, at *3. These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (*quoting* Soc. Sec. Rul. (SSR) No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). An ALJ's failure to provide good reasons for electing to not give controlling weight to a treating source denotes a lack of substantial evidence and requires remand, unless it constitutes harmless error. *Wilson*, 378 F.3d at 544-50.

Here, the ALJ failed to give good reasons for her decision to not afford controlling weight to Dr. Hansen's opinions. The ALJ found that Dr. Hansen's opinions were entitled to "some weight," because he was a treating physician. However, the ALJ concluded that Dr. Hansen's opinions failed the test for controlling weight because they were "inconsistent with the assessments of other treating and examining sources and the medical record as a whole." (A.R. 30). The ALJ did not address whether Dr. Hansen's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques."

The ALJ did address three of the requisite five factors listed in 20 C.F.R. § 416.927(c)(1)-(5)—the length of the treatment relationship (though not the frequency), the nature and extent of the treatment relationship, and Dr. Hansen's specialization. (A.R. 22-23). But these factors are properly applied only after the ALJ has determined that a treating physician's opinion will not be given controlling weight. *See* 20 C.F.R. § 416.927(c)(2). The ALJ also notes her conclusion that "[o]ther than injections, pain medications, and some physical therapy, the claimant has only had conservative care for her back. She has not had back surgery or other ongoing neurologic deficits oftentimes associated with severe and disabling pain." (A.R. at 30). However, the ALJ fails to identify any evidence to support this proposition. The ALJ notes that a "July 2011 discogram [performed by Dr. Hansen] showed significant loss of disc height at L4-5 producing pain," (*Id.* at 23), but she does not address these results, much less the consistency or reliability of the test. The ALJ also does not address Dr. Hansen's treatment notes dating back to 2006, in which he indicated a "failure of conservative management in this patient." (*Id.* at 688, 693). Moreover, Dr. Hansen specifically opined that surgery would only result in a 50/50 chance of success. (*Id.* at 1895). The ALJ does not

9

identify what evidence serves as the basis for this conclusion, and fails to explain how this analysis informs her application of the controlling weight rule.

The ALJ's failure to provide "good reasons" for her decision that Dr. Hansen's opinions were not entitled to controlling weight "hinders a meaningful review of whether the ALJ properly applied the treating physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377. The ALJ concludes that Dr. Hansen's opinions were "inconsistent" with those of "other treating and examining sources and the medical record as a whole," but she fails to identify the substantial evidence that is purportedly inconsistent with Dr. Hansen's findings. The ALJ also did not touch on the supportability of the opinion, as required by the regulations. The Court is thus left without any understanding of why the ALJ elected to accord Dr. Hansen's opinion and medical source statements only "some weight."

### 2. Dr. Bayulot

Plaintiff also argues that the ALJ improperly discounted the opinions of Plaintiff's treating psychologist, Dr. Bayulot. (R. 17-1, at 12). Plaintiff began seeing Dr. Bayulot in February of 2009. (A.R. 1430). In March 2009, Dr. Bayulot provided a mental capacity assessment of Plaintiff's abilities to do work-related activities. (*Id.* at 1060-63). Dr. Bayulot found Plaintiff to have poor or no ability to function in relating to coworkers, dealing with the public or dealing with work stress. (*Id.* at 1061). She also indicated that Plaintiff had poor or no ability to use judgment, interact with supervisors, function independently, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate responsibility. (*Id.* at 1061-62). Dr. Bayulot did find that Plaintiff had a good ability to follow work rules, maintain personal appearance, and understand, remember, and carry out simple job instructions. (*Id.*). Dr. Bayulot

10

opined that Plaintiff would miss numerous days of work due to her illness, noting that she becomes moody and irritable when stressed, and had racing thoughts. (*Id.* at 1062).

The ALJ accorded Dr. Bayulot's assessment "some weight." (*Id.* at 31). The ALJ found that aside from a few explanatory sentences in the assessment, Dr. Bayulot provided no information, diagnoses, or explanation to support her opinions. (*Id.*). The ALJ also noted that Dr. Bayulot's assessment acknowledged that Plaintiff was not compliant with appointments and medications. (*Id.*). The ALJ concluded that "due to the lack of compliance with treatment and little explanation to support [her] assessment," Dr. Bayulot's opinions did not deserve controlling weight. (*Id.*). "In addition, some of the reasons [s]he provided for the assessment are not evident in h[er] treatment records or in the record as a whole." (*Id.*).

Again, the ALJ did not provide good reasons for failing to accord controlling weight to Dr. Bayulot's opinions. First, the ALJ did not clarify whether Dr. Bayulot's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." Second, the ALJ failed to adequately explain why she assigned Dr. Bayulot's opinion only "some weight." Specifically, she only addressed three of the requisite five factors listed in 20 C.F.R. § 416.927(c)(1)-(5)—the length of the treatment relationship (with no mention of the frequency of examination), the nature and extent of the treatment relationship, and Dr. Bayulot's specialization. The ALJ did not touch on the supportability of the opinion, and only vaguely referenced the consistency of Dr. Bayulot's opinion with other evidence in the record.

Third, ALJ does not give "good reasons" for her conclusion that Dr. Bayulot's opinion was entitled to only "some weight." The ALJ stated that Dr. Bayulot's treatment notes do not support

11

the limitations she opined. However, the ALJ does not support her conclusion with evidence in the record. In all capital letters, Dr. Bayulot's assessment asks the doctor to make findings "BASED ON YOUR EXAMINATION." (*Id.* at 1060). Thus, it would appear that Dr. Bayulot believed that her opinions were so based. This assumption is substantiated by Dr. Bayulot's handwritten treatment notes from her visits with Plaintiff. (*Id.* at 1430-44). Although difficult to read, these notes indicate that Plaintiff suffered from multiple psychological symptoms, including poor impulse control, irritability, mood swings, anxiety, etc. (*Id.* at 1430-34). The ALJ summarized these treatment notes in a single sentence: "The treatment records show noncompliance with medications and appointments." (*Id.* at 24). Apart from this single sentence, it appears the ALJ failed to consider any of Dr. Bayulot's treatment notes in weighing her opinions as a treating source. The ALJ never identified the "reasons" Dr. Bayulot gave for her assessment that were absent from her own treatment notes or from the record as a whole. The Court is thus left without any understanding of why the ALJ found Dr. Bayulot's opinions were not entitled to controlling weight.

The Commissioner maintains that even if the ALJ did not properly weigh the opinions of Plaintiff's treating physicians,[2] the Court should still find that the decision is supported by substantial evidence. However, the Sixth Circuit has made clear that an ALJ's non-compliance with 20 C.F.R. § 416.927(c)(2) will not be excused simply because her decision is otherwise supported by substantial evidence in the record. *Wilson*, 378 F.3d at 546. "[T]o recognize substantial evidence as a defense to non-compliance with [§ 416.927(c)(2)] would afford the Commissioner the ability to violate the regulation with impunity." *Id.*; *see also Blakley*, 581 F.3d at 407 ("failure to follow

---

[2] The Commissioner's argument refers to the ALJ's credibility determinations instead of the weight afforded to treating physicians. (R. 21, at 13). The Court assumes that this was in error, and the Commissioner intended to direct this argument towards the issues raised in this case.

the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.") (internal citation and quotation omitted). Substantial evidence, therefore, cannot rectify the procedural violations committed by the ALJ. Failure to evaluate the claim according to the statutory framework requires remand of the matter. *See Williams v. Barnhart*, 338 F. Supp. 2d 849 (M.D. Tenn. 2004). For these reasons, it will be recommended that the matter be remanded for further consideration.[3]

**B.      The ALJ did not error by not addressing Plaintiff's GAF score.**

Plaintiff also takes issue with the ALJ's failure to acknowledge her Global Assessment Functioning (GAF) score or include her GAF score in the hypothetical questions posed to the VE. (R. 17-1, at 13). Plaintiff maintains that four psychologists opined that her GAF score was under 50, a score which "represents serious symptoms or any serious impairment in social, occupational, or school functioning." (*Id.* at 11). While a GAF score may be instructive to the ALJ in formulating the RFC or hypothetical questions, it is not essential for either to be accurate. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Thus, the ALJ's failure to reference the GAF score, standing alone, does not require remand.

**C.      The ALJ's reliance on the medical opinions of non-treating sources.**

Finally, Plaintiff takes issue with the ALJ's reliance on the opinions of Dr. Caudill, Dr. Swan, and Dr. Joos. (R. 17-1, at 18). Drs. Caudill and Swan each performed a physical residual functional

---

[3] Plaintiff also contends that because the ALJ did not adopt the opinions of Plaintiff's treating physician and psychologist, the ALJ's hypotheticals to the VE did not accurately portray Plaintiff's individual physical and mental impairments. (R. 17-2, at 12). Ordinarily, the Court would be inclined to address this argument to provide the ALJ further guidance on remand. However, because this argument depends on the ALJ's treatment of the opinions of Drs. Hansen and Bayulot, the Court cannot address the argument until the ALJ has reconsidered her treatment of those opinions on remand.

capacity assessment. (A.R. 740-47; 812-819). Plaintiff asks that the Court "send a clear signal to Defendant that experts must have credentials of record to substantiate their ability to give expert opinions. For all we know, Dr. Caudill or Dr. Swan could be podiatrists." (R. 17-1, at 18). Plaintiff also asks the Court to "take a hard position on the fact that many of these non-examining evaluators do not review the evidence of record including the objective testing. There is typically no indication (as in this case) what if anything was reviewed. Additionally (as in this case) much of the evidence, including testing, is submitted after these lower administrative evaluations take place." (*Id.*).

"Opinions from nontreating and nonexamining sources are never assessed for controlling weight." *Gayheart*, 710 F.3d at 376. Instead, the Commissioner weighs these opinions based on the factors set forth in 20 C.F.R. § 416.927(c). When a treating source opinion is not deemed controlling, the ALJ must weigh nontreating and nonexamining opinion based on the examining relationship (or lack thereof), specialization, consistency, and supportability. *Id.* Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion." *Id.*; 20 C.F.R. § 416.927(c)(6).

To the extent that Plaintiff is advocating for change to the administrative regulations that govern an application for social security benefits, Plaintiff misunderstands the role of this Court. As the Court has already noted, in reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson*, 402 U.S. at 390 (1971); *Blakley*, 581 F.3d at 405. It is not the Court's role to interpret or define the scope of the administrative regulations governing social security claims.

14

Plaintiff's argument, although not altogether clear, seems to suggest that the ALJ erred in relying on the opinions of Drs. Caudill and Swan because their medical credentials are unknown; neither personally examined Plaintiff; and they may not have reviewed the record in this case. (R. 17-1, at 18). But a consultative physician need not personally examine a social security claimant for the ALJ to accept his opinion. State agency consultants are "experts in the Social Security disability programs," and "[i]n appropriate circumstances, opinions from State agency consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling 96-6p. Plaintiff's assertion that there is "no indication . . . what if anything was reviewed," is similarly unhelpful. (R. 17-1, at 18). Plaintiff bears the burden of showing that a remand or an award of benefits is appropriate. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) (*citing Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). A claimant cannot demonstrate error merely by suggesting that error is possible. Thus Plaintiff's argument is little more than unsubstantiated speculation.

Plaintiff also suggests that the ALJ erred in giving the opinion of Dr. Joos "great weight," when "a very important test (the discogram) was performed after any of the evaluations were completed." (R. 17-1, at 18-19). It is not reversible error in itself for an ALJ to accord greater weight to the opinions of state agency consultants than to the opinions of a claimant's treating physician. Indeed, in appropriate circumstances the opinions of state agency consultants may be entitled to greater weight, *see* Soc. Sec. Rul. 96-6p; for instance, when the "State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*

Here, an October 2010 consultative examination was performed by Beth Joos, MD, at the request of the Disability Determination Service (DDS). (A.R. at 23). The ALJ described Dr. Joos' findings as follows:

> Consultative examiner, Dr. Joos is the first examining source to provide restrictions. Dr. Joos found the claimant to have a "subjective" amount of impairment due to complaints of low back pain. It was noted that she would be best suited for activities that did not require physical exertion and which were not intellectually challenging. She also needed frequent position changes. Such was based on an essentially normal examination except for obesity, diminished range of motion, and a slow painful appearing gait. (Exhibit 45F). This assessment is consistent with sedentary work. It deserves great weight, as it is consistent with the medical evidence as a whole, described above, showing progressive impairment, and is consistent with Dr. Joos' physical examination.

(*Id.* at 29-30). The ALJ's decision provides no indication that she applied the factors set out in 20 C.F.R. § 416.927(c)—supportability, consistency, specialization—when weighing the consultative doctor's opinions, other than to note the consistency of Dr. Joos' conclusions with her examination and the medical evidence as a whole. It is unclear whether the ALJ reviewed Dr. Joos' opinions against the objective medical evidence and other evidence presented of record. The ALJ's function is to weigh what she finds to be adequate evidence of record and resolve conflicts therein so as to carry out the duties with which she is charged. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

Ultimately, whether the ALJ erred in her treatment of Dr. Joos' opinions need not be decided at this time, in light of the recommended remand as to the treating physician opinion evidence. The opportunity for addressing the factors set forth in 20 C.F.R. § 416.927(c) as applied to Dr. Joos' opinions will be available to the ALJ on remand.

IV.     **CONCLUSION AND RECOMMENDATION**

As discussed above, the ALJ erred in her consideration of the treating physician opinion evidence. Therefore, it is **RECOMMENDED** that:

1.     Defendant's Motion for Summary Judgment (R. 21) be **denied;**

2.     Plaintiff's Motion for Summary Judgment (R. 17) be **granted in part** as to Plaintiff's request for a reversal of the Commissioner's decision and remand, and **denied in part** to the extent Plaintiff seeks an award of benefits outright; and,

3.     the Decision be **reversed** and the matter **remanded** under sentence four of 42 U.S.C. § 405(g), with instructions for the ALJ to reconsider and adequately explain her treatment of the medical opinion evidence.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 18th day of February, 2015.



Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

G:\DATA\social security\13-160 Scholl R&R final.wpd

17